UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X

JAMES R. WOOTEN,

                Plaintiff,

    - against -

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES-
OFFICE OF CIVIL RIGHTS, MICHAEL
R. CARTER, RALPH BALSAMO, and
GEORGIA C. VERDUGO,

                Defendants.

————————————————————————X

**OPINION AND ORDER**

**10 Civ. 3728 (SAS)**



SHIRA A. SCHEINDLIN, U.S.D.J.:

# I.    INTRODUCTION

James R. Wooten ("Wooten" or "Plaintiff"), proceeding *pro se*, filed

an Amended Complaint on July 2, 2010, seeking damages in the amount of one

million dollars against the United States Department of Health and Human

Services - Office of Civil Rights, Michael R. Carter, Ralph Balsamo, and Georgia

C. Verdugo (collectively, "Defendants"). Carter is an OCR Regional Director,

Balsamo is an OCR investigator, and Verdugo is the Director of the OCR

(collectively, "Individual Defendants"). The Complaint concerns the dismissal of

certain administrative complaints plaintiff filed with the United States Department of Health and Human Services - Office of Civil Rights ("HHS" or "OCR"). Plaintiff alleges that Duane Reade, Inc. ("Duane Reade") and its attorneys disclosed Plaintiff's medical information in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")[1]. Plaintiff asserts a *Bivens* claim against the Defendants on the grounds that the dismissal of his administrative complaints violated his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments.[2] Plaintiff also seeks judicial review of OCR's action pursuant to the Administrative Procedure Act ("APA")[3], alleging that the dismissals were arbitrary and capricious.[4]

Defendants now move to dismiss the Amended Complaint on the following grounds: (1) this Court lacks subject matter jurisdiction over the claims against HHS due to sovereign immunity; (2) Plaintiff has no right to judicial review of HHS action under the APA; and (3) Plaintiff fails to state a claim against

---

[1] Pub. L. No. 104-191, §§ 261-264, 110 Stat. 1936 (Aug. 21, 1996).

[2] *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[3] 5 U.S.C. §§ 702-706.

[4] In Plaintiff's Opposition to the Motion to Dismiss, he asserts for the first time a Federal Torts Claim Act claim against HHS and the individual defendants. As this claim is not properly pled, I decline to address it.

Verdugo, Carter or Balsamo.  For the reasons stated below, Defendants' motion is granted in its entirety and Plaintiff's Amended Complaint is dismissed with prejudice.

## II.   BACKGROUND[5]

### A.   Underlying Facts

This case originates from an incident occurring at a Duane Reade store in 2006, in which there was an altercation between Plaintiff and several Duane Reade employees.  Subsequently, Plaintiff filed a complaint against Duane Reade with the New York State Division of Human Rights ("SDHR"),[6] and later sued Duane Reade and others for race-based discrimination in the United States District Court for the Eastern District of New York.  Plaintiff's four complaints to the OCR arise out of the disclosure of Plaintiff's protected medical information in the course of the underlying Eastern District lawsuit.  Specifically, Plaintiff complained to the OCR that Duane Reade disclosed medical information beyond the scope of Plaintiff's HIPAA authorization form, thereby violating the HIPAA

---

[5]     The following facts are drawn from the Amended Complaint ("Compl.") and are presumed to be true for the purpose of this motion.

[6]     *See* Compl. at 8.

3

Privacy Act. Plaintiff's claims were investigated, and determined to be without merit. Plaintiff now challenges those OCR determinations.

### B.    Plaintiff's Complaints to the OCR

#### 1.    OCR Complaint No. 1

Plaintiff's first OCR complaint, no. 07-62470 (later identified as no. 08-76213),[7] was filed with Carter, and alleged that Duane Reade, Inc., and its counsel, Stephen A. Fuchs, Esq., wrongfully disclosed Plaintiff's protected health information for the year 2004.[8]  Plaintiff signed a HIPAA Authorization form, dated October 15, 2006, which authorized Duane Reade to release Plaintiff's medical information for the period June 1 through June 30, 2006, as requested in the SDHR investigation.[9]

According to Wooten, disclosure of the 2004 information was made without his authorization because only information pertaining to the period between June 1 and June 20, 2006 could be released pursuant to his HIPAA

---

[7]    OCR closed complaint No. 07-62470 without investigation on July 16, 2007.  Plaintiff appealed the decision, and the agency reopened the matter on January 11, 2008 and investigated the allegations under a new complaint number, 08-76213. *See id.* at 12.

[8]    *See id.* at 6.

[9]    *See* HIPAA Authorization Form ("HIPAA Authorization"), Ex. H to the Compl.

4

authorization form.[10]  Wooten alleges that Duane Reade's  attorney discussed Plaintiff's protected health information for the year 2004 with the pharmacist and pharmacy technician in the course of preparing for the lawsuit.  This information included Plaintiff's use of "Oxycodone (federally controlled drug) medication for his severe back pain, Plaintiff's medication for his depression, and other prescription medications and the Plaintiff's medicare and other insurance coverage."[11]  Wooten acknowledges that he initialed his name authorizing Duane Reade to discuss his medical history and information with SDHR.[12]  While investigating this Complaint, OCR learned that Duane Reade's law firm, Littler Mendelson had conducted interviews with the pharmacy staff concerning the 2006 confrontation.  OCR determined that there was no improper release of protected health information.[13]

---

[10]     *See* Compl. at 9.

[11]     *Id*. at 11.

[12]     *See* HIPAA Authorization.

[13]     *See* OCR Correspondence To Wooten and Duane Reade, 11/10/08 ("11/10/08 Letter"), OCR Letter to Duane Reade, 10/10/09 ("10/10/08 Letter"), Duane Reade Correspondence to OCR with Attached Business Associate Agreement, 10/22/08 ("10/22/08 Letter and Agreement"),  Exs. J-L to the Compl.

Upon further investigation, OCR learned that there was no "Business Associate Contract"[14] in place between Duane Reade, Inc., and Littler Mendelson.[15] The OCR requested and obtained voluntary compliance with this requirement, and received a Business Associate Agreement from Duane Reade dated October 22, 2008.[16] Carter and Balsamo found no other violations, and the action was dismissed and closed on July 17, 2007.[17]

### 2.    OCR Complaint No. 2

While the investigation of plaintiff's initial OCR complaint was pending, plaintiff filed a second OCR complaint (No. 08-87725) on August 20, 2008. Wooten contends that Duane Reade improperly acquired mental health records from St. Luke's Roosevelt Hospital, to be used by Duane Reade in deposing him during the Eastern District lawsuit.[18] This complaint stemmed from

---

[14]     *See* 45 CFR 164.502(e), 164.504(e).  Under the Privacy Rule, Covered entities, like Duane Reade, are allowed to disclose protected health information to "business associates."  The covered entity must obtain written assurances that the business associate will use the information only for the purposes for which it was engaged, will safeguard the information from misuse, and will help the covered entity comply with some of the covered entity's duties under the Privacy Rule.

[15]     *See* 11/10/08 OCR Letter.

[16]     *See id.*

[17]     *See* Compl. at 7.

[18]     See *id.* at 21.

Duane Reade's use of another HIPAA authorization that plaintiff admittedly signed but claims he did not initial.[19]   Plaintiff believes the initials on the document were forged.[20]

### 3.    OCR Complaint Nos. 3-4

On October 9, 2008, while plaintiff's first two actions were pending, Wooten filed two additional complaints with OCR (No. 09-90023 and No. 09-90024).   Carter sent Plaintiff a letter dated December 8, 2008 explaining that OCR was consolidating these two complaints into his existing complaint No. 08-87725, as the allegations were the same as those in complaint No. 08-87725.[21]

OCR's  investigation into the allegations in Wooten's complaints included a review of written documentation supplied by Wooten and the covered entity, as well as an interview of Wooten.[22]  "Additionally, in order to ensure the covered entity complies with the Privacy Rule, OCR reviewed the covered entity's

---

[19]    See *id.* Although Plaintiff states that the HIPAA authorization dated May 7, 2008 was included as Exhibit P to the Amended Complaint, there is no such exhibit.

[20]    *See id.*

[21]    *See* OCR Correspondence to Wooten, 10/08/08 ("10/08/08 Letter"), Ex. N to the Compl.

[22]    OCR Letter to Wooten and Saint Lukes Roosevelt Hospital, 08/05/09 ("OCR Letter 08/05/09"), Ex. Q to the Compl.

written policy regarding the disclosure of protected health information pursuant to an authorization form."[23]  OCR determined that the disclosure made by Saint Luke's Roosevelt Hospital to the Law Firm was based on the HIPAA authorization form instructing them to disclose said information, and that it complied with the Privacy Rule.[24]  OCR also explained to Wooten that it did not have jurisdiction to investigate his allegations of forgery, but gave him the names of agencies who could.  Finding no violation of the Privacy Rule, the case was dismissed and closed on August 5, 2009.[25]

### C.   The Federal Court Complaint

#### 1.   Original Complaint

Plaintiff filed his initial Complaint with this Court on February 11, 2010.  Wooten alleged that the investigation and closing of his OCR complaints violated his constitutional rights to due process and equal protection as well as his rights under HIPAA.  On May 5, 2010, the Court issued a sixty-day Order ("Order"), dismissing Plaintiff's claims under HIPAA.  The Court also dismissed plaintiff's *Bivens* claims, observing that because plaintiff was challenging the

---

[23]   *Id.*

[24]   *See id.*

[25]   *See id.*

8

OCR decisions, his claims must be brought under the Administrative Procedure Act ("APA").[26] The Court granted plaintiff leave to amend his Complaint "to seek review by this Court of the OCR decision pursuant to the requirements set forth in the APA."[27] Additionally, the Court stated that "Plaintiff is advised that should he request this Court to set aside the decision, he may not also seek monetary relief to compensate him for his alleged injuries."[28]

### 2.    Amended Complaint

In his Amended Complaint, Plaintiff sues HHS, and the Individual Defendants, seeking one million dollars in damages. Wooten alleges that Carter and Balsamo misrepresented the role of the Privacy Rule as pertaining to Wooten's complaints to OCR, and argues that the Privacy Rule did not "authorize Duane Reade to disclose patients' protected health information pertaining to health oversight activities."[29]

Wooten also alleges that Carter and Balsamo violated section 704 of the APA "when they claimed that Duane Reade did not violate the Privacy Rule,"

---

[26]    *See* Order at 3-4.

[27]    *Id.*

[28]    *Id.* at 4.

[29]    Compl. at 7.

9

and further alleges that the dismissals of his OCR complaints were "arbitrary, capricious and abuse of discretion and not in accordance with the law as well as contrast to Constitutional rights, power, privilege and immunity."[30]  Wooten claims that Carter and Balsamo "aided and abetted Duane Reade Inc. by dismissing complaint 07-62470 . . . in an effort to cover up for Duane Reade having released and made disclosure, without a valid authorization, [of] the Plaintiff's protected health information for the year 2004, in violation of the Privacy Rule 45 CFR 164.508(a)(2)."[31]

Additionally, Plaintiff alleges that Carter and Balsamo wrongfully consolidated three of Plaintiff's complaints, claiming that each complaint had "different issues and warranted separate independent investigations of each complaints, pursuant to law."[32]  Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1) - Lack of Subject Matter Jurisdiction

---

[30]   *Id.* at 10.

[31]   *Id.* at 13.

[32]   *Id.* at 24-25.

A district court may exercise subject matter jurisdiction if the action "arises under" federal law.[33] An action "arises under" federal law if "'in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law.'"[34] "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."[35]

When defendants challenge the legal sufficiency of the Plaintiff's jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the Plaintiff.[36] However, "where evidence relevant to the jurisdictional question is before the court, 'the district court . . . may refer to [that] evidence.'"[37] Therefore, "[i]n resolving the question of jurisdiction, the [] court can refer to evidence outside the pleadings

---

[33]    *See Bracey v. Board of Educ. of City of Bridgeport*, 368 F.3d 108, 113 (2d Cir. 2004) (citing 28 U.S.C. § 1331).

[34]    *Id.* at 114 (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1993) (superseded by statute on other grounds)).

[35]    *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[36]    *See Robinson v. Government of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (quotation marks and citation omitted).

[37]    *Id.* (alterations in original) (quoting *Makarova*, 201 F.3d at 113).

11

and the plaintiff asserting subject matter jurisdiction has the burden of proving by

a preponderance of the evidence that it exists."[38]  The consideration of materials

extrinsic to the pleadings does not convert the motion into one for summary

judgment.[39]

**B.    Rule 12(b)(6) - Failure to State a Claim**

In deciding a Rule 12(b)(6) motion to dismiss, a court must "accept

as true all of the factual allegations contained in the complaint"[40] and "draw all

reasonable inferences in [the] plaintiff's favor."[41]  However, a court need not

accord "[l]egal conclusions, deductions or opinions couched as factual allegations

. . . a presumption of truthfulness."[42]  To survive a motion to dismiss, the pleading

must contain "sufficient factual matter, accepted as true, to 'state a claim to relief

---

[38]    *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

[39]    *See CCS Int'l Ltd. v. United States*, No. 03 Civ. 0507, 2003 WL
23021951, at *2 (S.D.N.Y. Dec. 24, 2003).

[40]    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  *Accord
Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[41]    *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298
(2d Cir. 2006).

[42]    *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)
(internal quotation marks and citation omitted).

that is plausible on its face.'"[43] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[44] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[45]

In deciding a 12(b)(6) motion, the court may not consider evidence offered by a party which is outside of the pleadings. Rather, the court is limited to reviewing the four corners of the complaint, any documents attached to that pleading or incorporated in it by reference, any documents that are "integral" to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice.[46] Judicial notice may encompass the

---

[43]    *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.")).

[44]    *Id.*

[45]    *Id.* (quoting *Twombly*, 550 U.S. at 556).

[46]    *See, e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Leonard F. v. Israel Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999).

status of other lawsuits in other courts and the substance of papers filed in those actions.[47]

In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[48]   A pleading that offers nothing but "labels and conclusions," "naked assertions" without "further factual enhancement," or a "formulaic recitation of the elements of action" will not suffice.[49]   This pleading requirement applies equally to *pro se* litigants.[50]   However, the submissions of a *pro se* litigant should be held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'"[51]   District courts should "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they

---

[47]     *See, e.g., Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003); *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86-87 & nn.3 & 4 (2d Cir. 2000); *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229, 238-39 & n.1 (S.D.N.Y. 2009) (taking judicial notice of Surrogate's Court and state Supreme Court findings and decisions).

[48]     *Twombly*, 550 U.S. at 555.

[49]     *Id.* at 557.

[50]     *See Arias-Mieses v. CSX Transp., Inc.*, 630 F. Supp. 2d 328, 331 (S.D.N.Y.2009).

[51]     *Hughes v. Rowe,* 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam)).

suggest.'"[52]  These same principles apply to briefs and opposition papers submitted by *pro se* litigants.[53]

### C.    Principles of Sovereign Immunity

In a suit where the United States is named as a defendant, there must be a cause of action, subject matter jurisdiction, and an express waiver of sovereign immunity.[54]  This is so because the United States is immune from suit except "as it consents to be sued."[55]  Congress can waive the Government's sovereign immunity only through clear and unequivocal statutory language and may predicate such waiver on satisfaction of specific conditions.[56]  This waiver "is

---

[52]      *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[53]      *See Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003); *Burgos*, 14 F.3d at 790.

[54]      *See Presidential Gardens Assocs. v. United States ex rel. Sec'y of Housing and Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999).  Section 1331, providing for federal question jurisdiction, is unrelated to a waiver of sovereign immunity.  *See, e.g., Doe v. Civiletti*, 635 F.2d 88, 94 (2d Cir. 1980) ("Section 1331 is in no way a general waiver of sovereign immunity.  Such a waiver, if it exists at all, must be sought in the statute giving rise to the cause of action.").

[55]      *United States v. Mitchell*, 445 U.S. 535, 538 (1980).

[56]      *See CCS Int'l Ltd.*, 2003 WL 23021951, at *2 (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996) and *United States v. Dalm*, 494 U.S. 596, 608 (1990)).

a prerequisite to subject-matter jurisdiction but the issues of subject-matter

jurisdiction and sovereign immunity are nonetheless 'wholly distinct.'"[57]

"An action against a federal agency or federal officers in their official

capacities is essentially a suit against the United States."[58] Thus, a plaintiff

pursuing a claim against a federal officer must demonstrate either that the suit is

permissible under a "specific statutory authorization to sue the United States, or

that in effect, the proceeding is not a suit against the United States."[59] For

instance, courts have found that sovereign immunity does not shield the defendant

officer who has acted: (1) in his "individual capacity, rather than on behalf of the

United States, or outside the scope of his governmental authority;" (2) pursuant to

his governmental authority, but in violation of the plaintiff's "clearly established

constitutional or statutory rights;" or (3) pursuant to an unconstitutional grant of

---

[57]    *Presidential Gardens Assocs.*, 175 F.3d at 139 (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 786-87 n.4 (1991)).

[58]    *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). *See also* 14 Charles Alan Wright, Arthur C. Miller & Edward H. Cooper, Federal Practice and Procedure § 3655, at 344 (3d ed. 1998) ("Suits against federal agencies and officers may be barred by the doctrine of sovereign immunity if the conduct in question has been undertaken on behalf of the government."); *Marshall v. National Ass'n of Letter Carriers Br. 36*, Nos. 00 Civ. 3167, 01 Civ. 3086, 2003 WL 223563, at *6 (S.D.N.Y. Feb. 3, 2003) ("Suits against federal agencies or federal officials in their official capacities are suits against the United States and are similarly barred absent an applicable waiver.").

[59]    14 Wright, Miller & Cooper, § 3655, at 344.

authority.[60]  "Sovereign immunity is a jurisdictional bar, and a waiver of sovereign immunity is to be construed strictly and limited to its express terms."[61]

Government officials performing discretionary functions are generally granted qualified immunity and are immune from suit provided that "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[62]

## D.   Principles of the Administrative Procedure Act

The APA governs judicial review of an agency's compliance with regulations, and provides a mechanism for the review of certain agency decisions. Under the APA, a court must set aside an agency action, finding, or conclusion if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, . . . [or] without observance of procedure required by law."[63] An agency decision is accorded a "presumption of regularity," and the party challenging the

---

[60]     *Id.* at 347. *Bivens* grants plaintiffs an implied cause of action to vindicate violations of their constitutional rights by federal officials where no adequate remedial mechanisms are available to redress the injury.

[61]     *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) (citing *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) (interpreting scope of the federal government's waiver of sovereign immunity under the APA).

[62]     *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

[63]     5 U.S.C. §§ 706 (2)(A).

17

decision has the burden of proof.[64]  An agency decision is arbitrary and capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.[65]

A reviewing court must make a "searching and careful" inquiry into "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."[66]  However, review under the APA is not available where the relevant statute precludes judicial review or where "agency action is committed to agency discretion by law."[67]  The APA does not apply where the plaintiff seeks money damages.

---

[64]     *Citizens to Preserve Overton Park, Inc. v. Volpe*, 40 U.S. 402, 415 (1971). *Accord Vermont Pub. Interest Research Group v. United States Fish & Wildlife Serv.*, 247 F. Supp. 2d 495, 505 (D.Vt. 2002).

[65]     *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

[66]     *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989)(citing *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 416).

[67]     5 U.S.C. § 701(a).

## IV.   DISCUSSION

### A.   Dismissal for Lack of Jurisdiction - Sovereign Immunity

The Government moves to dismiss plaintiff's *Bivens* claim against

HHS for lack of jurisdiction based on sovereign immunity.  Plaintiff argues that

his constitutional rights were violated when his complaints were closed.  For the

same reasons set forth in the sixty-day Order, Wooten may not bring a *Bivens*

action against a federal agency, where it has not waived sovereign immunity.[68]

Because HHS has never waived sovereign immunity, this Court lacks subject

matter jurisdiction over HHS on plaintiff's *Bivens* claim.

### B.   Plaintiff's Right to Judicial Review of HHS - OCR  Decisions Under the APA

Defendants next argue that Plaintiff has no right to judicial review of

the actions of HHS under the APA.  Plaintiff has attempted to escape the

sovereign immunity bar by invoking section 702 of the APA, in which Congress

enacted a limited waiver of the Government's  sovereign immunity for claims of

---

[68]     In footnote 2 of the sixty-day Order, Chief Judge Preska wrote "A *Bivens* action may not be brought against federal agencies or federal officers in their official capacities but must be brought against individual federal employees, officials or agents. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994); *Polanco v. United States Drug Enforcement Admin.*, 158 F.3d 647, 650 (2d Cir. 1998); *Armstrong v. Sears*, 33 F.3d 182, 185 (2d Cir. 1994).  Accordingly, to the extent plaintiff alleges civil rights liability on the part of OCR, that claim must be dismissed." Order at 3.

"legal wrong [sustained] because of agency action . . . seeking relief other than money damages."[69] This section permits plaintiff to seek judicial review of the agency's decision to close his complaints. However, "Congress explicitly retained immunity with respect to agency actions that are committed to agency discretion."[70] "Judicial review 'is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'"[71]

The Government correctly argues that these HHS decisions are not reviewable, as the agency has discretion with respect to the investigation of complaints.[72] HIPAA's Privacy Rule states

> the Secretary may investigate complaints filed under this section. Such investigation may include a review of the pertinent policies, procedures, or practices of the covered entity and of the circumstances regarding any alleged violation. At the time of initial written communication with the covered entity about the complaint, the Secretary will

---

[69]    5 U.S.C. § 702. *See also Frasier v. United States Dep't of Health and Human Servs.*, 779 F. Supp. 213, 219 (N.D.N.Y. 1991).

[70]    *Frasier*, 779 F. Supp. at 219. *See also* 5 U.S.C. 701(a)(2).

[71]    *Id.* (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).

[72]    *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Def. Mem.") at 9.

describe the act(s) and/or omission(s) that are the basis of the complaint.[73]

As the underlying HIPAA regulations provide no clear guidelines on enforcement, the HHS has discretion as to how to investigate potential Privacy Rule violations. Even if Wooten could seek judicial review of the agency action, he has not explained with any specificity how the actions of HHS were arbitrary or capricious. HHS reviewed his complaints, investigated them, and issued an unfavorable determination. Because HHS has the discretion to investigate and enforce potential HIPAA violations, the APA claim is barred by sovereign immunity.

### C.    Plaintiff's *Bivens* Claim Against Verdugo

In order to state a valid *Bivens* claim, Plaintiff must allege that each defendant was personally involved in the allegedly improper conduct.[74] "Because personal involvement by a federal official is a prerequisite to liability under *Bivens*, federal officials who are not personally involved in an alleged

---

[73]    45 C.F.R. § 160.306.

[74]    *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) ("having failed to allege, as they must, that these defendants were directly and personally responsible for the purported unlawful conduct, their complaint is fatally defective on its face") (quotation marks and citation omitted)).

constitutional deprivation may not be held vicariously liable under *Bivens* for the acts of subordinates."[75]

Wooten's *Bivens* claim against Verdugo fails because Wooten does not allege that Verdugo had any personal involvement in the alleged improper conduct. Aside from the initial caption and list of parties in the action, there is no mention of Verdugo anywhere in the Amended Complaint. Plaintiff's *Bivens* claim against Verdugo is therefore dismissed.

### D.    Plaintiff's *Bivens* Claims Against Balsamo and Carter

Wooten also brings *Bivens* claims against Balsamo and Carter in their individual capacities. Defendants argue that Wooten fails to plead facts alleging that these individual defendants "engaged in any sort of invidious discrimination or otherwise considered any constitutionally impermissible facts in investigating closing plaintiff's complaints. He therefore cannot state a claim for violation of his right to equal protection."[76] While there was personal involvement by the officers in investigating Wooten's complaints, there is no factual basis to support a claim that these defendants violated any of plaintiff's constitutional rights.

---

[75]    *Perez v. Hawk*, 302 F. Supp. 2d 9, 19 (E.D.N.Y. 2004). *See also Iqbal*, 129 S. Ct. at 1948-49.

[76]    Def. Mem. at 13.

Wooten alleges that Carter and Balsamo wrongfully dismissed his multiple complaints. In particular, he claims these defendants "evaded and failed to address Duane Reade's violation of the Privacy Rule" and that it was "arbitrary, capricious and abuse of discretion and not in accordance with the law."[77] Wooten also contends that OCR's investigators did not take into account that Duane Reade did not have HIPAA authorization to discuss his 2004 health information with the pharmacist and pharmacy technician while investigating the underlying suit between Duane Reade and Wooten.[78] Additionally, Wooten alleges that the last two complaints filed were wrongfully consolidated into an earlier complaint.

During OCR's investigation of the complaints, HHS found that the interviews with the pharmacy staff pertained only to the 2006 incident at Duane Reade. No additional protected information was released or discussed.[79] As noted, HHS has the discretion to investigate possible constitutional violations. This includes the discretion to consolidate similar complaints. There is nothing in the pleadings to suggest that the investigator's decision to close or consolidate these matters violated Wooten's constitutional rights.

---

[77]    Compl. at 9.

[78]    *See id.* at 10.

[79]    *See* 11/10/08 Letter.

23

Wooten also contends that "Carter and Balsamo conspired . . . to implement the fraudulent "Business Associate Agreement"" between Duane Reade and its law firm.[80]  HHS policy indicates that

> (1) If an investigation of a complaint pursuant to § 160.306 or a compliance review pursuant to § 160.308 indicates noncompliance, the Secretary will attempt to reach a resolution of the matter satisfactory to the Secretary by informal means. Informal means may include demonstrated compliance or a completed corrective action plan or other agreement

> (2) If the matter is resolved by informal means, the Secretary will so inform the covered entity and, if the matter arose from a complaint, the complainant, in writing.[81]

In learning that Duane Reade lacked a Business Associate Agreement, OCR requested and obtained Duane Reade's voluntary compliance with this rule.  The OCR investigators properly followed the procedure set forth in HHS's 'Case Resolution Manual' and closed the complaint.[82]

In his final complaint (no. 08-87725),  Wooten alleged that Saint

---

[80]     Compl. at 20.

[81]     45 C.F.R. § 160.13(a)(1),(2).

[82]     "A Regional Manager has the discretion to close a case as Change Achieved after Voluntary Compliance where the covered entity has carried out an action sufficient to ensure compliance with the regulations." *Case Resolution Manager for Civil Rights Violations*, United States Department of Health and Human Services, Office of Civil Rights, 06/19/09.

24

Luke's Roosevelt Hospital inappropriately disclosed his protected health

information to Duane Reade's law firm. The investigation included

> review of written documentation submitted by the
> complainant and the covered entity, as well as an interview
> with the complainant. Additionally in order to ensure the
> covered entity complies with the Privacy Rule, OCR
> reviewed the covered entity's written policy that addresses
> the disclosure of protected health information pursuant to
> an authorization form.[83]

Based on a valid authorization signed by Wooten, the disclosure was not deemed a

violation and OCR closed the complaint.

Plaintiff fails to offer any specifics on how his "equal protection and

due process rights" were violated, though he uses this phrase continuously

throughout the Complaint. Nor does he allege how Carter or Balsamo abused their

discretion. While plaintiff plainly disagrees with the outcome of the

investigations, this does not make it a constitutional violation. Therefore,

Wooten's *Bivens* claims against Carter and Balsamo are dismissed.

---

[83]     OCR Letter 08/05/09.

## V.   CONCLUSION

For the reasons stated above, the Amended Complaint is dismissed with prejudice.  The Clerk of the Court is directed to close the instant motion (Document # 11) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
        February 14, 2011

26

**- Appearances -**

**Plaintiff (Pro Se):**

James R. Wooten
424 Cathedral Parkway, Apt. 5C
New York, NY 10025

**For Defendants:**

Jaimie L. Nawaday
Assistant U.S. Attorney
Southern District of New York
86 Chambers Street
New York, NY 10007
(212) 637-2528